IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 10-cv-02464-LTB-BNB

COMMUNICATION WORKERS OF AMERICA,

        Plaintiff,

v.

AVAYA, INC.,

        Defendant.

_____

ORDER
_____

      This matter is before me on cross Motions for Summary Judgment filed by Plaintiff Communication Workers of America (the "Union") [**Doc # 15**], and by Defendant Avaya, Inc. ("Avaya") [**Doc #14**]. The Union filed this lawsuit seeking to compel arbitration of the parties' underlying workplace dispute and is now requesting summary judgment in its favor and an order compelling Avaya to submit to arbitration. Avaya seeks summary judgment in its favor and dismissal of this lawsuit. Oral arguments will not materially aid in the resolution of these motions. After consideration of the parties' briefs, and for the reasons stated below, I DENY the motion filed by Avaya, I GRANT the motion filed by the Union.

### I. Underlying Facts

      Avaya is in the business of providing its clients with communications systems. The Union is a labor organization which represent some of Avaya's occupational employees. Avaya and the Union have entered into a Collective Bargaining Agreement (the "CBA") and, as part

thereof, have further agreed to a Neutrality and Consent Election (the "NCE") which provides the "exclusive means by which the Union . . . will conduct an effort to organize non-management employees" at Avaya. [CBA – Exhibit A to the Complaint – at page 299]

On March 1, 2010, the Union gave Avaya notice that it intended to start a formal organizing drive of the unrepresented employees known as "backbone engineers" who worked for Avaya in Denver. In response to the notice, Avaya advised the Union that the NCE did not apply to backbone engineers – as they were management employees – and, thus, it denied that the Union's request for access to the bargaining unit employees on March 10, 2010.

Thereafter, on March 16, 2010, the Union filed an internal grievance (#10-0118) with Avaya in which it claimed that Avaya improperly refused to follow the procedures in the NCE related to the Union's attempt to organize the backbone engineers. The Union sought remedy in the form of assigning a Third-Party Neutral ("TPN") to resolve the dispute as provided for in Section 8(d) of the NCE. On March 17, 2010, the Union proposed a name of a former National Labor Relations Board ("NLRB") attorney to serve as the TPN. Also on that date the Union filed an unfair labor practice charge with the NLRB, but it has subsequently withdrawn that charge.

On March 24, 2010, Avaya responded that it would not agree to use a TPN because it believed that the backbone engineers were not covered by the NCE language of the CBA. On March 25, 2010, the Union responded with its position that the parties were obligated pursuant to NCE procedures to use a TPN to resolve whether the backbone engineers were managers. On May 3, 2010, Avaya formally rejected the Union's grievance. In so doing, it again asserted that NCE language in the parties' CBA covers only non-management employees, and since the

backbone engineer positions were management level jobs, the NCE language – including its dispute resolutions process – did not apply to the engineers. Thus, Avaya found "no violation of the CBA."

The Union appealed Avaya's refusal of its grievance, thorough the steps provided for in the CBA, but the parties subsequently failed to come to resolution. The Union then sought to take the unresolved grievance to arbitration under the CBA arbitration provisions, via letters dated May 3, 2010 and June 2, 2010, but Avaya refused on June 8, 2010, based on its position that "the grievance is not arbitrable, as the backbone engineers are not covered" by the CBA.

The Union subsequently filed its Complaint to Compel Arbitration with this court on October 8, 2010. In its complaint, the Union raises a single claim of Specific Performance of Arbitration Agreement – pursuant to 29 U.S.C. §185(a) and 9 U.S.C. §§ 1 *et. seq.* – and seeks entry of an order compelling Avaya to submit the Union's grievance filed March 16, 2010 to arbitration. [Doc #1] The parties then filed the motions for summary judgment now at issue.

## II. Standard of Review

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III. Standard to Compel Arbitration

In *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court set out several rules governing the role of courts and arbitrators in resolving industrial disputes. First, the agreement

to arbitrate is a matter of contract, and the Court will compel arbitration only insofar as the parties have agreed to do so. *Id.* at 648. Second, the determination of whether a collective bargaining agreement requires arbitration of a particular dispute is a question for judicial determination, unless the parties have clearly provided that an arbitrator can determine arbitrability. *Id.* at 649. Third, a decision as to arbitrability of a particular grievance must be made by the Court without regard to the merits of the underlying dispute. *Id*. at 649-50. Finally, where the collective bargaining agreement contains an arbitration clause, the Court indulges a presumption of arbitrability, and should compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650.

## IV. Analysis

It is Avaya's position that it is undisputed that the backbone engineers are managerial employees and, as such, any attempt to organize them by the Union is not governed by either the CBA or the NCE, which clearly only apply to non-managerial employees. Avaya argues that this dispute is not substantially arbitrable because it has not contractually agreed to submit it to arbitration. Because neither the CBA nor the NCE apply to managerial employees – such as the backbone engineers at issue here – Avaya maintains that any dispute about them is not covered by those agreements and is not arbitrable.

The Union, in contrast, "believes" that the backbone engineers are unrepresented non-managerial employees and, as such, the process regulating its attempt to represent them is set out in the NCE, which provides the procedures the Union must follow to organize such employees. When Avaya refused to follow those procedures – either correctly or incorrectly – the Union

4

filed a grievance with Avaya pursuant to the CBA. After the internal grievance procedure was unsuccessful, the Union attempted to have the issue arbitrated. When Avaya refused to arbitrate, the Union filed this lawsuit.

My review of the relevant documents reveals that the parties' CBA includes a "Memorandum of Understanding," which "binds" the Union and Avaya "to amend and extend the collective bargaining agreements." [CBA at page 153] The Memorandum of Understanding covers issues such as compensation, pensions, health benefits, education & training, etc. of represented employees. The "Union Management Relations" section of the Memorandum of Understanding contains the NCE, which notes that it "shall be the exclusive means by which the Union . . . will conduct an effort to organize non-management employees." [CBA at page 153] As part the NCE procedures, Section 8(d) provides that "[i]f the dispute involves the appropriateness of the bargaining unit the Union seeks to organize and the parties are unable to agree . . . upon the description of an appropriate unit for bargaining, the issue of such description of such unit shall be submitted to the TPN . . ." [CBA at page 233]

In Articles 9 and 10 of the CBA provides the following language related to its forum for settling employee disputes:

> The Company and the Union recognize and confirm that the grievance procedures set forth in Article 9, and, where applicable, Article 10 (Arbitration) and Article 11 (Mediation), provide the mutually agreed upon and exclusive forums for resolution and settlement of employee disputes during the term of this Agreement. A grievance is a complaint involving the interpretation or application of any of the provisions of this Agreement . . . [CBA at page 15]
>
> . . .
>
> If, at any time, a difference arises between the Company and the Union regarding the true intent and meaning of a provision under this Agreement, or a question as to the performance of any obligation hereunder, the grievance procedures set forth

in Article 9 (Grievance Procedure) shall be employed in an effort to settle said differences. If the grievance procedures do not result in settlement of the differences, the Union may institute proceedings pursuant to this Article to resolve the dispute in question; it being understood that the right to require arbitration extends only to matters expressly set forth in this Article and which are not otherwise expressly excluded from arbitration. [CBA at page 18]

Under Section 9, the CBA provides that the grievance procedures are the "exclusive forums for resolution and settlement of employee disputes ..." and a grievance is broadly defined as "a complaint involving the interpretation or application of any of the provisions of this Agreement." Section 10 then states that if "difference arises between the Company and the Union regarding the true intent and meaning of a provision under this Agreement," and "the grievance procedures do not result in settlement of the differences, the Union may institute proceedings pursuant to this Article to resolve the dispute in question; it being understood that the right to require arbitration extends only to matters expressly set forth in this Article and which are not otherwise expressly excluded from arbitration." I note that the CBA sets forth several matters expressly excluded from the grievance/arbitration process, but that Avaya does not refer me to any specific exclusions relevant or applicable here.

I conclude that pursuant to the provisions of the CBA, Avaya has agreed to arbitrate the dispute at issue here; namely, whether the procedures of the NCE should be applied (in the form of submitting the dispute to a TPN) to determine whether the "backbone engineers" are or are not managerial employees subject to the NCE and the Union's effort to organize those employees. The relevant provisions in the parties' CBA – including the broad arbitration provision – are clearly susceptible to an interpretation that covers this dispute. *See AT&T Technologies v. CWA, supra,* 475 U.S. at 650 ("an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute")(*quoting United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). To the extent that Avaya argues that there is no material issue of fact regarding whether the backbone engineers are managerial employees, I find that such determination is an assessment of the underlying merits before an arbitrator and, as such, is not before me. *See AT&T Technologies v. CWA, supra,* 475 U.S. at 649 ("in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims").

Avaya asserts that even if the dispute here is subject to arbitration, the matter should be dismissed as Union's lawsuit seeking to compel arbitration is untimely. The parties agree that the Tenth Circuit has not ruled on the applicable statute of limitations in this context. In its motion, Avaya first argues that I should adopt the 90-day statute of limitations in the Colorado Revised Uniform Arbitrations Act for moving the court to vacate an arbitration award, under Colo. Rev. Stat. § 13-22-223(2), to actions seeking to compel arbitration. However, as Avaya itself notes, all the other Circuits – except the Fourth Circuit – apply the six-month statute of limitations for filing uniform labor practices set out in Section 10(b) of the National Labor Relations Act. *See* 29 U.S.C. § 160(b); *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Indus. and Service Workers' Intern. Union v. ConocoPhillips Co.,* 748 F.Supp.2d 1315, 1320 (N.D. Okla. 2010)(listing jurisdictions adopting the six-month statute of limitations under Section10(b) to actions to compel arbitration); *see also Workers of America, AFL-CIO v. Western Elec. Co., Inc.,* 860 F.2d 1137, 1141 (1st Cir. 988)(finding actions to compel arbitration analogous to unfair labor practice actions for statute of limitations purposes).

7

I conclude, given the weight of the legal authority, that the six-month statute of limitations of Section 10(b) of the National Labor Relations Act should be applied to this action.

In this case the Union took the underlying dispute through the grievance process, as required by the CBA. After that process was unsuccessful, it sought arbitration, but Avaya refused via letter dated June 8, 2010. The Union then filed its complaint with this court, on October 8, 2010, four months after the Union denied its request for arbitration. As a result, I conclude that the Union's filing of its action here was timely. In so doing, I reject Avaya's argument that the statute of limitations started to run when it informed the Union, at the onset of this dispute, that its position was that the NCE procedures did not apply to the backbone engineers, "thus indicating that a dispute regarding such employees would not be subject to the provisions of [the NCE and the CBA as a whole] including their dispute resolution processes." Rather, because the CBA requires the exhaustion of the grievance procedure before a dispute is subject to arbitration, as discussed above, the time period for the statute of limitations did not commence until that process was completed and Avaya then explicitly refused to submit the unresolved issue to arbitration on June 8, 2010. *See United Steel v. ConocoPhillips, supra,* 748 F.Supp.2d at 1323 (holding that "the determination of when a cause of action accrued for each grievance will be a fact-dependant inquiry into whether [the employer] communicated a 'clear refusal' to arbitrate the grievance and, if so, when that communication occurred").

As a final matter, I also address and reject Avaya's assertion that I cannot decide this matter because federal courts lack subject matter jurisdiction over activity that is arguably subject to Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157 & 158, which provides that the NLRB has exclusive or primary jurisdiction to decide questions concerning

8

representation.

First, to the extent that Avaya argues, for the first time in its reply brief, that the NLRB has determined the merits of whether the backbone engineers are management employees, I disagree that Avaya has provided me with such evidence. Moreover, the issue before me, as discussed above, is not whether the backbone engineers are or are not managerial employees subject to representation by the Union. Rather, the question here is whether Avaya's refusal to arbitrate is a violation of the parties' CBA. Because I have found that the relevant provisions of the CBA and the NCE – as a part of the CBA – do in fact dictate that the dispute be arbitrated, I do not reach the merits of the underlying disagreement related to representation, but instead must enter an order compelling arbitration under the CBA. *See* 29 U.S.C. §185(a); *Communication Workers of America, AFL-CIO v. US West Direct,* 847 F.2d 1475, 1478 (10th Cir. 1988)(noting that while the line between a representational issue and a contractual issue often is blurred, "the question of whether or not the employees in question came within the definition of the bargaining unit went to the merits of the union's claim and thus was for the arbitrator to decide" under the parties CBA)(*quoting International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. of Puerto Rico, Inc.,* 636 F.2d 848, 849 (1st Cir. 1980)).

ACCORDINGLY, I DENY Defendant's Motion for Summary Judgment and Incorporated Brief [**Doc #14**] and I GRANT Union's Motion for Summary Judgment Compelling Arbitration [**Doc #15**]. I ORDER SUMMARY JUDGMENT BE ENTERED, as a

matter of law, in favor of Plaintiff, Communication Workers of America, and against Defendant, Avaya Inc., and, as such, Defendant is ORDERED to submit the grievance filed by the Union on March 16, 2010 to arbitration. Plaintiff is AWARDED ITS COSTS as provided for by law.

Dated: September   26  , 2011 in Denver, Colorado.

                              BY THE COURT:

                                s/Lewis T. Babcock
                              LEWIS T. BABCOCK, JUDGE